UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                                :

THE NORTHERN ASSURANCE COMPANY OF :
AMERICA,                                           :
                                           Plaintiff,   :          12 Civ. 02958 (LGS)
                                                              :
                -against-                         :          OPINION & ORDER
                                                               :
NORTH EAST MARINE, INC.,                :
                                            Defendant.  :
                                                               :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

       On July 19, 2011, non-party Alexander Astrakan sued Defendant North East Marine, Inc. ("Marine"), among other Defendants, in a personal injury lawsuit for injuries sustained in November 2010 while on a barge owned and operated by Marine. Plaintiff Northern Assurance Company of America ("NACA") is an insurance company and brings this declaratory judgment action against its insured, Marine, seeking a declaration that Marine breached the utmost duty of good faith due to misrepresentations and omissions in the insurance application, and therefore NACA has no duty to defend or indemnify Marine in connection with the underlying action. Defendant Marine brings a counterclaim alleging NACA's bad faith and breach of contract and seeks enforcement of the policy. The parties now cross-move for summary judgment as to NACA's declaratory judgment claim. For the reasons stated below, both motions are denied.

**I. Background**

       Marine is a New York corporation owned and operated by Francois Guillet that rents tugboats, platform barges, and equipment used by engineers to inspect piers and bridges. Marine currently owns three tugboats, the *Elena*, the *Jerry*, and the *Osage*. The *Osage* is out of service.

Mr. Guillet, in his individual capacity, purchased the *Elena* as a used vessel in 1970 and the *Jerry* some time before 1970. He transferred ownership of the tugs to Marine in 2002.

NACA is an insurance company that is part of the OneBeacon Insurance Group. International Marine Underwriters ("IMU") is a division of the Group that conducts underwriting for marine insurance policies issued by OneBeacon companies. For the time period relevant to this case, IMU acted as underwriting and claims agent for NACA on all marine insurance policies issued by NACA. Acting as NACA's agent, IMU issues insurance policies on behalf of NACA, covering tug and barge operations, passenger vehicles, and commercial vessels operating in near coastal and inland waterways of the United States. NACA provides hull insurance and protection and indemnity ("P&I") insurance to its insureds.

In 2003, an insurance broker approached IMU to place coverage for Marine. On July 17, 2003, IMU issued Marine a policy for hull and P&I insurance for a one- year period beginning July 9, 2003, which was renewed from year to year until the coverage was not renewed in July 2011. The issuance of the policy was subject to a number of conditions, including a requirement that Marine arrange for survey of the tug and barge at its own expense. The surveys required Marine to demonstrate the seaworthiness of the vessels, their condition, and their value. The policy was also conditioned on a completed and signed Hull and P&I application on IMU's form application. The issuance was also conditioned on submission of the captain's license for the captain of the *Elena*, and a written confirmation of Marine's loss record for the previous five years.

The application requested, *inter alia*, identification of the owners of Marine, the size and construction of the tug and barge to be insured, the range in which the vessels would operate, the nature of Marine's operations, the age of the vessels, and whether the insured vessels are all of the vessels operated by the assured or its affiliates. The policy was renewed every year through

2010. In 2010, IMU wrote to Marine's broker to confirm that the schedule of vessels remained unchanged, and that the three vessels insured were the "1970 26' Tug "*Elena*"[,] 1990 35' Deck Barge [and] 2002 40' Deck Barge." The identification of a year in connection with a vessel is intended to indicate the year it was built. The tug *Elena* was actually built in 1949 according to Coast Guard records, which Mr. Guillet knew prior to 2003, and Marine was in possession of the U.S. Coast Guard documentation prior to the renewal of the policy in 2010. Also, Marine incorrectly answered "Yes," that the insured vessels were all of the vessels operated by Marine, even though the list omitted the *Jerry*.

On January 27, 2010, the New York Secretary of State issued a proclamation of involuntary dissolution for Marine, as a result of its failure to pay franchise taxes to the State of New York. Under New York Tax Law § 201-a, the Secretary of State is required to issue a proclamation of involuntary dissolution for any for-profit corporation that has failed to pay franchise taxes for two consecutive years. When a corporation pays its franchise taxes, the dissolution is annulled *nunc pro tunc*. Marine did not inform IMU or NACA of the involuntary dissolution. The involuntary dissolution was annulled on August 23, 2012, when Marine paid its franchise taxes.

The underlying action, for which Marine seeks coverage, arose in November 2010 when an individual was injured during a bridge inspection "while in and about a man-lift that came off a barge." The barge was in tow by the *Elena*.

## II.  Legal Standard

A motion for summary judgment may not be granted unless all of the submissions taken together show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010). "The moving party bears the burden of establishing the

absence of any genuine issue of material fact." *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010). In deciding a motion for summary judgment, a court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (internal quotation marks omitted). Not every disputed factual issue is material in light of the substantive law that governs the case. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### III. Discussion

NACA seeks to have the policy voided under the doctrine of *uberrimae fidei*, which translates to the "utmost good faith." Under the doctrine, a party seeking to insure its vessels must be truthful not only in providing information to insurers, but also in volunteering to the insurer any material information. If an insured misrepresents material information or fails to bring forward information material to the insured risk, the policy is void *ab initio*. *See Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 13 (2d Cir. 1986); *see also* 2 Thomas Schoenbaum, ADMIRALTY AND MARITIME LAW § 19-14 (5th ed. 2011).

"The principle of *uberrimae fidei* does not require the voiding of the contract unless the undisclosed facts were material and relied upon." *Puritan Ins. Co. v. Eagle S.S. Co. S.A.*, 779 F.2d 866, 871 (2d Cir. 1985). "A fact is not material unless it is 'something which would have controlled the underwriter's decision.'" *Id.* (quoting *Btesh v. Royal Ins. Co.,* 49 F.2d at 720, 721 (2d Cir. 1931)). "[A] marine insurance policy 'cannot be voided for misrepresentation where the alleged misrepresentation was not relied upon and did not in any way mislead the insurer.'" *Id.* (quoting *Rose and Lucy, Inc. v. Resolute Ins. Co.,* 249 F.Supp. 991, 992 (D. Mass. 1965)). "The assured complies with the rule if he discloses sufficient [information] to call the attention of the

underwriter in such a way that, if the latter desires further information, he can ask for it." *Id.* (internal quotation marks omitted). "The standard for disclosure is an objective one, that is, whether a reasonable person in the assured's position would know that the particular fact is material." *Knight*, 804 F.2d at 13. "The materiality determination normally presents an issue of fact [], but where the evidence concerning the materiality is clear and substantially uncontradicted, the matter is one of law for the court to determine." *Mut. Ben. Life Ins. Co. v. JMR Elecs. Corp.*, 848 F.2d 30, 32 (2d Cir. 1988) (internal quotation marks omitted).

Marine argues that *uberrimae fidei* does not apply to the P&I policy at issue in this case, because P&I insurance is not subject to the doctrine, because its function is not maritime in nature. Marine relies on three cases from other Circuits to support its position. The cases stand for the proposition that, where only a failure to disclose material information is at issue (rather than an affirmative misrepresentation), P&I insurance may not be subject to *uberrimae fidei* and may be subject only to the general insurance rule regarding misrepresentation. *See Hanover Fire Ins. Co. of N.Y. v. Merchants Transp. Co.*, 15 F.2d 946 (9th Cir. 1926); *Steelmet, Inc. v. Caribe Towing Corp*, 747 F.2d 689 (11th Cir. 1984); *Sorenson v. Boston Insurance Company*, 20 F.2d 640, 643 (4th Cir. 1927). The only case in this Circuit to address this issue directly is *EKCO Int'l Trade Corp. v. Zihni Holding A.S.*, No. 92 Civ. 6075 1995 WL 406124, at *6 (S.D.N.Y. July 7, 1995), in which Judge Wood relied on affidavits to find that P&I associations have the benefit of the doctrine. In *Commercial Union Ins. Co. v. Flagship Marine Servs., Inc.*, 982 F. Supp. 310, 314 (S.D.N.Y. 1997), Judge Rakoff analyzed a P&I case under *uberrimae fidei*, but did not address this issue and did not need to, as he found for the insured even applying the doctrine.

Here, there is no occasion to reach the issue, as all claims are either based upon knowing misrepresentations or do not give rise to a duty to disclose under *uberrimae fidei*. If the P&I insurance in this case were treated differently from the hull insurance, it would be analyzed

under New York law, as it would be a non-maritime contract. *Commercial Union Ins. Co. v. Flagship Marine Servs., Inc.*, 190 F.3d 26, 30 (2d Cir. 1999) ("Absent a specific federal rule, federal courts look to state law for principles governing maritime insurance policies."). Under New York law, misrepresentations by the insured will void a policy where there is a material misrepresentation that would have led the insurer to refuse to issue the policy, which is the same standard applied to misrepresentations under *uberrimae fidei*. *See* N.Y. Ins. Law § 3105(b)(1) (McKinney); *Fid. & Guar. Ins. Underwriters, Inc. v. Jasam Realty Corp.*, 540 F.3d 133, 139 (2d Cir. 2008).

NACA argues that Marine either misrepresented or failed to disclose three material facts upon which it relied in making its underwriting decisions and that these misrepresentations void the insurance contract. First is Marine's misrepresentation about the true age of the tug *Elena*. The Court finds that triable issues of fact exist as to whether the representation was material to the P&I risk, and whether NACA relied on the misrepresentation in making its P&I underwriting decision, including setting the P&I premiums. Second is Marine's failure to disclose the involuntary dissolution. Because the undisputed evidence shows that Marine had no knowledge of, and therefore no duty to disclose, the dissolution, it provides no basis for voiding the policy. Third is Marine's failure to disclose the existence of its second tug, the *Jerry*. The Court finds that a triable issue of fact exists as to whether NACA relied on the omission in determining the premium. Therefore, neither moving party has adduced facts sufficient to warrant summary judgment.

### A. The True Age of the *Elena*

It is undisputed that on its application for insurance, Marine misrepresented the age of the *Elena* as a vessel built in 1970, when it was in fact built before then. When a piece of information is requested in an application, it is presumptively material. "Where the insurer

specifically inquires as to a fact, the insured is thereby on notice that the insurer considers it material." *Christiania Gen. Ins. Corp. of New York v. Great Am. Ins. Co.*, 979 F.2d 268, 280 (2d Cir. 1992); *Kerr v. Union Marine Ins. Co.*, 130 F. 415, 417 (2d Cir. 1904) ("If the misrepresentation is made in reply to a specific question, the question of materialness is excluded . . . .").

    The age of the *Elena* is therefore material to the underwriter, as it is obviously material to the risk covered by the hull insurance. Whether it is material *to the risk insured*, and whether it was relied upon in making the insurance decision, are distinct questions. Information must be material to the risk being insured, and not just as to the policy generally. In *Btesh v. Royal Ins. Co., Ltd., of Liverpool*, the Second Circuit held that the policy will be voided only as to the risks insured due to the misrepresentations made by the insured. *Btesh*, 49 F.2d at 722 ("The fraud upon the carrier in respect of the silk had no sensible effect upon the risk as to the cotton; it was of no moment that Cherem had shown himself in general untrustworthy."). NACA argues that because it issues P&I insurance only in conjunction with its hull insurance, the Court cannot treat them separately and must void the policy entirely. Marine argues that NACA rates the policies separately and lists the premiums separately, and that like in *Btesh,* the risks are therefore insured separately. While issued as one policy, the risks insured were distinct and separate. As the underlying injury and coverage issue arise only under the P&I portion of the policy, the Court will consider voiding the policy *ab initio* only insofar as the facts in question were material to the P&I underwriting decision.

    Marine argues that the age of the *Elena* is not material to the P&I risk, citing the testimony of Michelle Gallego, NACA's underwriter, who testified that the relevant information for the P&I was the "crew/usage" in comparison to the relevant information for Hull insurance

which was based upon the "age and value of barges/vessels."  Marine further argues that the P&I underwriting guidelines make no mention of the seaworthiness or age of the vessels.

NACA argues that it would have charged a higher premium for the combined P&I and hull insurance, and further that the age of the vessel would have increased the premium for just the P&I portion of the insurance, relying on the testimony of its underwriter Michele Gallego and the testimony of its expert Richard Yerian.  The evidence shows disputed issues of material fact as to whether the age of the *Elena* was material to insuring the P&I risk.

The evidence also presents issues of fact regarding NACA's reliance on the statements in the application, even assuming that the age of the vessel is relevant to NACA's P&I underwriting decision.  Marine argues that by listing the age as built in 1970, it put NACA on sufficient notice of the *Elena*'s old age so that NACA could request further information.  Marine further argues that NACA did in fact obtain further information, as it did its own inspection of the seaworthiness of the *Elena*.  On the other hand, NACA has presented testimony from its underwriters that it relied on the information in setting its premiums for Marine, and that it would have sought a more thorough "out-of-water" inspection of the *Elena* had it known the tug had been built in 1949.  The evidence in the record raises a material factual dispute whether NACA relied on Marine's misrepresentation.

**B.  Corporate Dissolution**

NACA argues that Marine failed to disclose its involuntary dissolution, and in so doing, failed to disclose a fact material to the risk insured.  The doctrine of *uberrimae fidei*, however, "cannot of course require [a party] to tell what he does not know."  *Btesh,* 49 F.2d at 721; *accord Alexander, Ramsay & Kerr v. Nat'l Union Fire Ins. Co.*, 104 F.2d 1006, 1008 (2d Cir. 1939) ("The rule in marine insurance is that the insured must disclose to the insurer all circumstances known to him and unknown to the insurer which materially affect the risk").  Marine argues Mr.

Guillet firmly denied that he did not know of the dissolution, and thus had no duty to disclose it. NACA argues that Mr. Guillet's daughter was running the office at the time, and that if she knew, the company had a duty to inform NACA. There is no evidence in the record that Mr. Guillet's daughter knew of the insolvency proclamation or when she might have known. As such, the evidence is undisputed that NACA had no knowledge of its corporate dissolution, and therefore had no duty to disclose it.

## C. The Tug *Jerry*

The evidence is undisputed that Marine failed to disclose the *Jerry*, a second, uninsured tug that it owned and operated. NACA points to evidence that the existence of a second tug was a material fact to the risks that NACA insured in two respects. First, because Marine operated its tugs and barges together, a claim could arise from the use of the uninsured tug coupled with the insured barge so that NACA could be insuring for a risk without any corresponding premium. Second, the existence of uninsured vessels created the moral risk that Marine would claim that an insured vessel had been involved in a loss when the loss involved an uninsured vessel. In either event, if NACA had known of the uninsured vessel, NACA could have taken these additional risks into account when setting the premium.

Marine on the other hand argues that the size of its fleet was not material to NACA's underwriting decision and relies on the testimony of Ms. Gallego, who testified that "crew/usage" was the relevant consideration in insuring for P&I. Marine further argues that Ms. Gallego spoke only in generalities at her deposition about the relevance of the *Jerry* to the underwriting decision. As above, the lack of disclosure regarding the *Jerry* was made by Marine in response to a specific question, and therefore, is material as a matter of law. *See Kerr*, 130 F. at 417.

The record is unclear, however, whether the existence of the *Jerry* was relied upon in making the P&I underwriting decisions.  In addition to the evidence described above, Plaintiff points to evidence that early in the relationship, NACA became aware that Marine had a second barge which it did not yet insure and did not disclose on its application.  Nevertheless, NACA did not cancel the coverage when it learned of this uninsured vessel, and the second barge was later added to the policy as of the inception.  This evidence however, does not address the question of whether NACA would have increased the premium had it known of the operation of a second, uninsured tug.  Therefore, material issues of fact remain about NACA's reliance in its underwriting decisions on the omission of the *Jerry*'s existence.

**IV. Conclusion**

Genuine issues of material fact remain regarding NACA's reliance on Marine's misstatement about the age of the tug *Elena*, and Marine's failure to disclose the existence of the tug *Jerry*.  Therefore, both parties' motions for summary judgment are DENIED.  The parties shall submit a joint letter within one week of the date of this order, proposing a conference date to discuss pretrial submissions and trial.

The Clerk of the Court is directed to close the motions at docket numbers 39 and 48.

SO ORDERED.

Dated: October 31, 2013

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE